UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
KEVIN M. EPSTEIN
UNITED STATES TRUSTEE
REGION 7, SOUTHERN and WESTERN DISTRICTS OF TEXAS
HECTOR DURAN
TRIAL ATTORNEY
515 Rusk, Suite 3516
Houston, Texas   77002
Telephone: (713) 718-4650 x 241
Fax: (713) 718-4670

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. |
| | § | |
| BELK, INC., *et al.*, | § | 21-30630 (MI) |
| | § | (Chapter 11) |
| | § | |
| DEBTORS[1] | § | (Jointly Administered) |

OBJECTION OF UNITED STATES TRUSTEE TO
DEBTORS' EMERGENCY SCHEDULING MOTION AND
JOINT PREPACKAGED PLAN OF REORGANIZATION

TO THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE:

Kevin M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), objects to the *Debtors' Emergency Motion for Entry of an Order (i) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (ii) Establishing Plan and Disclosure Statement Objection Deadlines and Related Procedures, (iii) Approving the Solicitation Procedures, (iv) Approving the Confirmation Hearing Notice, and (v) Waiving the Requirements that the U.S. Trustee Convene a Meeting of Creditors and the Debtors File Schedules and SOFAs*

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.primeclerk.com/belk. The location of the Debtors' service address is 2801 West Tyvola Road, Charlotte, North Carolina 28217.

[Dkt. No. 14] (the "Scheduling Motion") and the *Joint Prepackaged Plan of Reorganization of Belk, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 10] (the "Plan"), and represents as follows:

## I.   Preliminary Statement

The Debtors seek to confirm a plan within hours of filing for bankruptcy, which would enable them to race through chapter 11 too quickly and deprive parties-in-interest, governmental agencies, and the Court sufficient time to evaluate – let alone respond or object to – the Plan. The process here sharply deviates from the Bankruptcy Code's qualified and carefully crafted authorization of pre-packaged bankruptcy plans. Indeed, those parties-in-interest fortunate enough to be aware of the filing of these chapter 11 cases were saddled with a deadline to object to the Plan and Disclosure Statement – as well as lengthy supporting documentation – *before* the Petition Date. The commencement of a bankruptcy case provides all parties with corresponding rights and obligations. The Debtors here want to have their cake and eat it too by foisting obligations onto others before shouldering the responsibilities held by Court-supervised debtors-in-possession. Similarly, the pace of these proceedings has spawned a litany of practical problems that range from the inability to create an evidentiary record to support the sweeping findings that the Debtors ask this court to make in the confirmation order to the inability of landlords to understand if leases will be assigned without their consent. Accordingly, the lack of adequate notice renders the Plan unconfirmable.

In addition, even if there were adequate notice, the Court should not confirm the Plan with the third-party releases and exculpation provisions because the releases are not truly consensual, and therefore not permitted under bankruptcy law, and because the Fifth Circuit has specifically held that this type of exculpation provision is impermissible under the Bankruptcy Code. Though

the Debtors attempt to frame the third-party releases as consensual, they are not. First, the nearly full-page, one-paragraph, single-spaced release starts with a 630-word sentence with 92 commas and five parentheticals. It is, simply put, unintelligible. To assert that tens of thousands of creditors have consented to a release that someone with a law degree would struggle to understand and that a creditor without legal training could not be expected to comprehend, eviscerates any meaning of the word consent, all the more so when the party was required to object or opt-out before the case was even filed and without any explanation in the Plan that opting out has no effect on their claim. Moreover, if a party was not a creditor on the day the debtors sent out the plan, but became one in the intervening period between solicitation and case filing, that creditor would not have received any notice of the third party release, but yet might be bound by it. These non-consensual third-party releases and the exculpation provisions both contravene section 524(e) under black letter Fifth Circuit law, and the Court should therefore deny confirmation unless the debtors remove these provisions from the Plan.

**II. Jurisdiction, Venue & Constitutional Authority to Enter a Final Order**

1. The Court has jurisdiction to consider this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this district under 28 U.S.C. § 1408.

2. This Court has constitutional authority to enter a final order in this matter. If it is determined that the bankruptcy judge does not have the constitutional authority to enter a final order or judgment in this matter, the U.S. Trustee consents to the entry of a final order or judgment by this Court in this matter.

3. Kevin M. Epstein is the duly appointed U.S. Trustee for Region 7. The U.S. Trustee has standing to raise, appear and be heard on any issue in a case or proceeding under the

Bankruptcy Code. 11 U.S.C. § 307.

4. The U.S. Trustee has a statutory duty to monitor the administration of cases commenced under the Bankruptcy Code. 28 U.S.C. § 586(a)(3). In chapter 11, the U.S. Trustee's supervisory responsibilities include monitoring plans and disclosure statements and filing comments with the court. 28 U.S.C. § 586(a)(3)(B).

### III. Factual Background

**A.     General Information**

5. On February 23, 2021 (the "Petition Date"), the Debtors filed chapter 11 voluntary petitions. To date, the U.S. Trustee has not appointed an official committee of unsecured creditors.

6. On the Petition Date, the Debtors filed the *Disclosure Statement* ("Disclosure Statement"), the *Joint Prepackaged Plan of Reorganization* (the "Plan"), and the *Plan Supplement*. *See* Dkt. Nos. 9 and 10.

7. The Proposed Scheduling Order provides that any objections to the Disclosure Statement and Plan must have been received by February 23, 2021, at 4:00 p.m., prevailing Central Time, ¶ 2. Dkt. No. 14-1.

8. The Debtors filed voluminous documents along with the Disclosure Statement and Plan, including the Restructuring Support Agreement (the "RSA"). Dkt. No. 9. It is dated January 26, 2021, more than four weeks before the Petition Date. *Id.* The RSA sets forth certain restructuring and recapitalization transactions between the Debtors, the Sponsor, and a majority of the holders of First Lien Term Loan Claims and Second Lien Term Loan Claims.

9. The Debtors request that the Court schedule a hearing for February 24, 2021, to approve the Disclosure Statement and confirm the Plan. *See* Proposed Scheduling Order, ¶ 1.

10. According to the Scheduling Motion, the Debtors request that the Court approve the following confirmation schedule:

| Event | Date |
|---|---|
| Voting Record Date | January 21, 2021 |
| Solicitation Launch | January 26, 2021 |
| Mailing Date | January 26, 2021 |
| Voting Deadline | February 5, 2021, at 4:00 p.m., prevailing Central Time |
| Opt-Out Deadline | February 23, 2021, at 4:00 p.m., prevailing Central Time |
| Objection Deadline | February 23, 2021, at 4:00 p.m., prevailing Central Time |
| Petition Date | February 23, 2021 |
| Reply Deadline | February 24, 2021 |
| Confirmation Hearing | February 24, 2021, at 8:00 a.m., prevailing Central Time |

Scheduling Motion, ¶ 8.

**B.     The Plan**

11. As detailed in the chart, the Plan sets forth nine classes:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | ABL Facility Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 4 | First Lien Term Loan Claims | Impaired | Entitled to Vote |
| Class 5 | Second Lien Term Loan Claims | Impaired | Entitled to Vote |
| Class 6 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 7 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept / Reject) |
| Class 8 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept / Reject) |
| Class 9 | Interests | Impaired | Entitled to Vote |

Scheduling Motion, ¶ 18.  The Impaired Classes include Class 4 (First Lien Term Loan Claims), Class 5 (Second Lien Term Loan Claims), and Class 9 (Interests).  *Id.*

12. Article VIII, D of the Plan imposes a third-party release of non-debtor claims.  This provision, which spans over a full page in length, provides that "each Releasing Party" is deemed

to "conclusively, absolutely, unconditionally, irrevocably and forever, release[] and discharge[ each Released Party]" (the "Third-Party Release"). Plan, Article VIII, D. All holders of claims and interests fall within the Plan's definition of "Releasing Party." Plan, Article I, A, § 133. The Plan's definition of "Released Party" sets forth a laundry list of debtor and non-debtor entities, including senior creditors, sponsors, and interest holders. *See* Plan, Article I, A, § 132. The Plan specifically calls upon the Court to find that the Third-Party Release is "a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) *given and made after due notice and opportunity for hearing*." Plan, Article VIII, D (*emphasis added*).

13. Separate from the Third-Party Release, the Plan contains a broad exculpation clause that provides that "no Exculpated Party shall have or incur liability or obligation for, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the RSA and related prepetition transactions, the Disclosure Statement, the New Credit Facilities, the New ABL Facility, the Plan, the Plan Supplement, or any Restructuring Transaction…" (the "Exculpation Coverage"). Plan, Article VIII, E. The Plan provides Exculpation Coverage to "(a) the Debtors; (b) each Company Party; (c) each Consenting Stakeholder; (d) any statutory committee appointed in the Chapter 11 Cases and each of their respective members; and (e) each current and former Affiliate of each Entity in clause (a) through the following clause (f); and (f) each Related Party of each Entity in clause (a) through this clause (f)." Plan, Article I, A, § 57.

14. The Plan prescribes a process by which holders of claims or interests may contest their impairment status. It provides that "If a controversy arises as to whether any Claims or

Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date." Plan, Article II, H.

15. The Plan contemplates the assumption and assignment of leases. Beyond deemed assignment of every executory contract and unexpired lease, the Plan dictates that such assumption "may include the assignment of certain of such contracts to Affiliates." Plan, Article V, A.

## IV.     Objection

**A.     The Debtors Have Provided Insufficient Notice of the Chapter 11 Cases and the Plan**

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted). Debtors must likewise give "reasonable notice" to creditors of the commencement of a bankruptcy case. *See In re Motors Liquidation Company*, 576 B.R. 761, 772 (Bankr. S.D.N.Y. 2017). The Fifth Circuit has likewise cautioned that "perfunctory knowledge" of a bankruptcy proceeding may "not constitute adequate notice to satisfy constitutional due process requirements." *In re Kendavis Holding Co.*, 249 F.3d 383, 388 (5th Cir. 2001).

In the context of a disclosure statement and plan of reorganization, Federal Rule of Bankruptcy Procedure ("FRBP") 3017 provides that "*after* a disclosure statement is *filed*," a court shall hold a hearing on "at least 28 days' notice" to all holders of claims and interests of the hearing on approval of the disclosure statement. Fed. R. Bankr. P. 3017 (*emphasis added*). Likewise, FRBP 2002 requires 28 days' notice to all creditors of the deadline for "filing objections and the hearing to consider approval of a disclosure statement…." Fed. R. Bankr. P. 2002(b). FRBP

7

3020(b)(1) provides that objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1).[2]

In this case, the Debtors' breakneck schedule precludes parties from meaningfully inquiring into the terms of the Plan, from examining the Debtors using the ordinary discovery tools available in contested matters, and from objecting to the Plan in a considered way. By scheduling a combined hearing on the Disclosure Statement and Plan a few hours after they were filed and setting an objection deadline prior to the Petition Date, there is inadequate time for parties in interest and the Court to consider the Plan and any potential objections they might raise, or to understand the process and import of the Debtors' proposals.

The process here sharply deviates from the Bankruptcy Code's qualified and carefully crafted authorization for prepackaged chapter 11 restructurings. While a properly managed prepackaged bankruptcy case can reduce the duration and costs associated with a long, drawn-out bankruptcy case, the expedited relief requested here represents a dramatic departure. Though the Debtors couch their proposal within FRBP 3017's 28-day framework, they conveniently omit two important words: "after" and "filed." *See* Fed. R. Bankr. P. 3017(a) ("after a disclosure statement is filed"). By definition, the Debtors cannot "file" a plan and disclosure statement before they file for bankruptcy. This is not a mere technicality; creditors and other interested parties have no affirmative duty to participate in a bankruptcy process that has not yet commenced. While there may be legitimate reasons to shorten an objection deadline after a pleading is filed, it is radically different to require objections before a party files the document with a court.

---

[2] Though FRBP 9006(c) may enable a party to request shortened time periods, the Debtors have made no motion and have offered no justification to shorten, let alone entirely eliminate, the standard 28-day notice period. *Cf*. Fed. R. Bankr. P. 9006(c)(2).

8

The Debtors' laundry list citation to unrelated expedited cases provides no persuasive support for their extraordinary request either. The Debtors point to no authority in which a court issued a written opinion that approved the same noticing process proposed in this case after a full consideration of a litigated objection. If anything, Courts within this District have affirmatively protected due process when considering similar requests. In *In Southcross Holdings, LP*, Case No. 16-20111-H1-11 (Bankr. S.D. Tex. 2016), during an emergency hearing on March 29, 2016, this Court's due process concerns were mollified by the fact that another hearing was to take place on April 11, 2017, nearly two weeks later. *Id.*, ECF Dkt. No. 114, page 7 of 106; *see also* page 12 ("I need to put those people in a position that they can come in and challenge a finding later."). The Court further stated that anyone who had not received due process prior to the hearing would be afforded a chance to argue that he or she should not be bound by the pre-petition voting on the plan. *See id.* In addition, the Court determined that if a creditor did not receive adequate notice, there could be a supplemental "mini confirmation" hearing with respect to that creditor's objection. *See id.* at pages 12-13 of 106.

Taken together, the Debtors provide virtually no legal or factual justification for the extraordinary relief they request here beyond a conclusory assertion of immediate and irreparable harm that would result from prolonged chapter 11 cases. Scheduling Motion, ¶ 58. The Debtors simply have not made a showing for the drastically expedited relief. The cases were filed mere hours before the scheduled hearing on confirmation, without providing interested parties with a meaningful opportunity to seek discovery or file an objection because the objection deadline occurred prior to the commencement of this case. While several key constituencies may have had ample opportunities to assess these documents, others, who are just learning about these cases for the first time, including government entities, such as the taxing authorities, have not.

Nor does this timetable square with specific Plan terms, such as the impairment dispute process. Article III, H of the Plan contemplate notice and a hearing prior to confirmation if a holder of a claim or interest disputes their status. The confirmation timing here renders that provision entirely unworkable because there is simply no time for "notice" and a "hearing" on such disputes in less than 24 hours—even if parties timely challenged their status. Other practical problems exist as well. Taking just one example, landlords may have no idea that the Plan could force them to accept performance from a debtor affiliate notwithstanding any anti-assignment protections that they are entitled to by law or contract. *See* Plan, Article V, A. This Court should therefore reject the Debtors' ultra-expedited confirmation request and provide interested parties with a meaningful opportunity to participate in the bankruptcy process.

**B.     The Third-Party Release is Non-Consensual and Violates Section 524(e)**

Section 524(e) precludes courts from discharging the liabilities of non-debtors. 11 U.S.C. § 524(e). The Fifth Circuit has interpreted this provision to impose a categorical prohibition on non-consensual third-party releases of non-debtor liability. *In re Pac. Lumber Co.*, 584 F.3d 229, 252-53 (5th Cir. 2009). By contrast, courts generally apply contract principles in deciding whether a creditor consents to a third-party release. *In re SunEdison, Inc.*, 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017) (citing cases). Though most courts agree that an affirmative action may amount to consent for a release, deemed consent "raises a more difficult question [because a]bsent a duty to speak, silence does not constitute consent." *Id*. In the context of a contract dispute, the Fifth Circuit has held that mere silence was not operative as an acceptance of the counter offer." *Houston Dairy, Inc. v. John Hancock Mut. Life Ins. Co.*, 643 F.2d 1185, 1188 (5th Cir. 1981).

In this case, the Debtors' opt-out noticing efforts have warped the concept of consent beyond recognition. Creditors and other interested parties did not affirmatively consent to the

10

Third-Party Release because they failed to opt-out of an unintelligible release provision, stretching over a full page single-spaced, with a first sentence that is 44 lines long with 630 words, prior to the time the Debtors filed for bankruptcy. While the Debtors may couch the procedure within the confines of the *Procedures for Complex Chapter 11 Cases in the Southern District of Texas* ("Complex Case Procedures"), nothing in Section L endorses an opt-out process that concludes before the commencement of a case. Regardless of whether the Complex Case Procedures impose a duty upon creditors and other third parties to speak generally, the Debtors have provided no authority to impose and conclude such an obligation prior to the commencement of the case. Similarly, some third parties may not have received any notice if they became creditors after the Debtors' mailing of ballots and notices. Consequently, the Third-Party Release is non-consensual[3], and the Plan therefore violates section 524(e) and, in turn, 11 U.S.C. § 1129(a)(2) (plan must comply with applicable provisions of the Bankruptcy Code).[4]

## C.     The Exculpation Provision Violates Fifth Circuit Law

Under controlling Fifth Circuit law, a chapter 11 plan may only exculpate a creditors committee and its members. *Pac. Lumber Co.*, 584 F.3d at 252-53; *see also In re Patriot Place, Ltd.*, 486 B.R. 773, 823-24 (Bankr. W.D. Tex. 2013) (applying *Pacific Lumber* and concluding that "that the Non–Debtor Releases/Exculpations proposed in the [plan were] vague, overbroad, and [did] not comply with Fifth Circuit precedent and the Bankruptcy Code"). In doing so, the Fifth Circuit expressly rejected "a more lenient approach to non-debtor releases taken by other

---

[3]     Non-consensual releases also impair those whom the Plan classifies as unimpaired. In *In re Chassix Holdings,* for example, the court held "that unimpaired creditors should not be deemed to have consented to the third party releases set forth in the Plan." 533 B.R. 64, 81 (Bankr. S.D.N.Y. 2015).
[4]     To be clear, the U.S. Trustee does not oppose the Debtors' decision to release estate-held claims or derivative claims consistent with FRBP 9019 and the debtors' business judgment.

11

courts" and held that the "fresh start § 524(e) provides to debtors is not intended to serve this purpose" for others. 584 F.3d at 252-53. With one exception for statutory committees, the Fifth Circuit considered and rejected any distinction between prohibited third party non-debtor releases and exculpation coverage. *See id.* at 253.

As noted above, the Plan provides Exculpation Coverage to "(a) the Debtors; (b) each Company Party; (c) each Consenting Stakeholder; (d) any statutory committee appointed in the Chapter 11 Cases and each of their respective members; and (e) each current and former Affiliate of each Entity in clause (a) through the following clause (f); and (f) each Related Party of each Entity in clause (a) through this clause (f)." Plan, Article I, A, § 57. With the exception of (d), none of the Exculpated Parties are entitled to Exculpation Coverage under black letter Fifth Circuit law. Under *Pacific Lumber*, the Plan's exculpation provisions violate 11 U.S.C. § 524(e) for the same reason as the Third-Party Release.

### V.     Conclusion

For the reasons above, this Court should deny the Scheduling Motion, deny confirmation absent further explanation, and grant such other and further relief as it may deem just and proper.

Dated: February 23, 2021                    Respectfully Submitted,

                                                                           KEVIN M. EPSTEIN
                                                                           UNITED STATES TRUSTEE
                                                                           REGION 7, SOUTHERN and WESTERN
                                                                           DISTRICTS OF TEXAS

                                                       By:     /s/ Hector Duran
                                                                Hector Duran
                                                                Trial Attorney
                                                                Texas Bar No. 00783996
                                                                515 Rusk, Suite 3516
                                                                Houston, TX 77002
                                                                Telephone:  (713) 718-4650 x 241
                                                                Fax:  (713) 718-4670

## CERTIFICATE OF CONFERENCE

I hereby certify that on February 23, 2021, I conferred with Elizabeth Freeman of Jackson Walker LLP, proposed counsel for the Debtors, but the parties were unable to resolve the matter.

/s/ Hector Duran
Hector Duran

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic means via ECF transmission or BNC noticing to all Pacer System participants in these bankruptcy cases, on the 23rd day of February, 2021.

/s/ Hector Duran
Hector Duran